## UNITED STATES v. McMILLAN.

### Crim. A. No. 69–53.

United States District Court
District of Columbia.

May 13, 1953.

Warren Olney III, Asst. Atty. Gen., and Ben B. Brooks, Sp. Asst. to Atty. Gen., for plaintiff.

William E. Leahy, James M. Ernest and Fred M. Vinson, Jr., Washington, D. C., for defendant.

T. BLAKE KENNEDY, District Judge (assigned from Wyoming).

The above entitled case is a prosecution through indictment against the defendant for having violated the statute prohibiting members of Congress from entering into, executing, holding and enjoying a contract made and entered into in behalf of the United States or any agency thereof and providing a penalty in the nature of a fine for any such violation. 18 U.S.C. § 431. The indictment is met by a plea of not guilty on the part of the defendant and while the present judge under assignment to the District of Columbia was presiding over trials at a criminal division of the court the present case came to trial. Counsel for the government and the defendant feeling that the case was one largely of the interpretation of the law governing the transactions involved, waived a jury and stipulated to the trial of issues by the Court. The case accordingly went to trial and the evidence was taken.

Inasmuch as the case seemed to involve the interpretation and construction of several different statutes the Court at that time felt that the matter could be better disposed of through the filing of memorandum briefs than by oral argument. Accordingly time was fixed for the filing of such briefs and eventually, after some extensions of time, they have reached the Court for consideration. It was subsequently stipulated that the final determination of the matter (it being a misdemeanor) might be disposed of in the judge's own district and a decision made and a judgment entered thereon without returning to the District of Columbia and without the defendant being present.

The case was taken under advisement principally on account of the confusion arising in the mind of the trial judge over the construction and interpretation of the statutes which seemed to be involved and it may be said in passing that that confusion has not been entirely dissipated after reviewing the briefs of the parties. However, it has become the duty of the Court to exert its best effort in disposing of the litigation and in consequence a memorandum will be submitted consisting largely of conclusions rather than a lengthy discussion of all the principles of law which seem to be involved.

The indictment is brought under U.S.C., Title 18, § 431, which reads as follows:

"Contracts by Member of Congress; exceptions

"Whoever, being a Member of or Delegate to Congress, or a Resident Commissioner, either before or after he has qualified, directly or indirectly, himself, or by any other person in trust for him, or for his use or benefit, or on his account, undertakes, executes, holds, or enjoys, in whole or in part, any contract or agreement, made or entered into in behalf of the United States or any agency thereof, by any officer or person authorized to make contracts on its behalf, shall be fined not more than $3,000.

"All contracts or agreements made in violation of this section shall be void; and whenever any sum of money is advanced by the United States or any agency thereof, in consideration of any such contract or agreement, it shall forthwith be repaid; and in case of failure or refusal to repay the same when demanded by the proper officer of the department or agency under whose authority such contract or agreement shall have been made or entered into, suit shall at once be brought against the person so failing or refusing and his sureties for the recovery of the money so advanced. June 25, 1948, c. 645, 62 Stat. 702."

Another principal statute which seems to be involved is U.S.C., Title 18, § 433, which reads as follows:

"Exemptions with respect to certain contracts

"Sections 431 and 432 of this title shall not extend to any contract or agreement made or entered into, or accepted by any incorporated company for the general benefit of such corporation; nor to the purchase or sale of bills of exchange or other property where the same are ready for delivery and payment therefor is made at the time

of making or entering into the contract or agreement. Nor shall the provisions of such sections apply to advances, loans, discounts, purchase or repurchase agreements, extensions, or renewals thereof, or acceptances, releases or substitutions of security therefor or other contracts or agreements made or entered into under the Reconstruction Finance Corporation Act, the Agricultural Adjustment Act, the Federal Farm Loan Act, the Emergency Farm Mortgage Act of 1933, the Federal Farm Mortgage Corporation Act, the Farm Credit Act of 1933, or the Home Owners Loan Act of 1933, the Farmers' Home Administration Act of 1946, the Bankhead-Jones Farm Tenant Act, or to crop insurance agreements or contracts or agreements of a kind which the Secretary of Agriculture may enter into with farmers.

"Any exemption permitted by this section shall be made a matter of public record. June 25, 1948, c. 645, 62 Stat. 703."

Another section cited by counsel is Title 41, U.S.C.A., § 22, which reads as follows:

"Interest of Member of Congress

"In every contract or agreement to be made or entered into, or accepted by or on behalf of the United States, there shall be inserted an express condition that no Member of or Delegate to Congress shall be admitted to any share or part of such contract or agreement, or to any benefit to arise thereupon. Nor shall the provisions of this section apply to any contracts or agreements heretofore or hereafter entered into under the Agricultural Adjustment Act, the Federal Farm Loan Act, the Emergency Farm Mortgage Act of 1933, the Federal Farm Mortgage Corporation Act, the Farm Credit Act of 1933, and the Home Owners' Loan Act of 1933, and shall not apply to contracts or agreements of a kind which the Secretary of Agriculture may enter into with farmers: Provided, That such exemption shall be made a matter of public record. * *"

A somewhat sketchy review of the facts presented by the evidence which seem not to be largely in dispute are substantially as follows: The defendant is a member of the Congress of the United States, representing the Sixteenth Judicial Congressional District in the State of South Carolina, and has continuously occupied that position from about the year 1938 up to and including the time of trial. Through some friend the defendant learned of land that was susceptible to application for leasing owned by the United States in the District of Utah and thereupon decided to file an application for certain selected areas through lease under the Federal Leasing Act of 1920, as amended, 30 U.S.C.A., § 181 et seq. Accordingly an application for lease was made through the managing agent of the Utah Land Office with the payment of the required fees under the provisions of the Leasing Act. No effort was made apparently on the part of the defendant to conceal his identity or his position as his address was given at the House Office Building, Washington, D. C. In due course of time the lease was issued to the defendant, which was forwarded to him at his address and which contained a clause known as Paragraph 9, reading as follows:

"Sec. 9. *Unlawful interest.*—It is also further agreed that no Member of, or Delegate to, Congress, or Resident Commissioner, after his election or appointment, or either before or after he has qualified, and during his continuance in office, and that no officer, agent, or employee of the Department of the Interior, shall be admitted to any share or part in this lease or derive any benefit that may arise therefrom; and the provisions of Section 3741 of the Revised Statutes of the United States, and sections 431, 432, and 433, title 18, United States Code, relating to contracts enter into and form a part of this lease *so far as the same may be applicable."* (Emphasis added.)

It will be noted that the inclusion of this section of the lease which was admittedly read by the defendant called sharply to his attention the matter of the proscription concerning Members of Congress under

Sections 431 and 433, supra, but with the added phrase "so far as the same may be applicable". The defendant signed the lease, returned it to the Utah office where it was likewise signed by the official there and returned to the defendant, thereby on its face becoming a legally executed contract as between the government and the defendant. The application for the lease is dated March 30, 1950, in which was specified the lands desired by the applicant and the fees required by the Act in the amount of some $740 were deposited as required by the leasing act. The evidence shows that before making the application the defendant examined the laws applicable to this particular form of lease and concluded that he was eligible to make such application and to receive and hold such a lease. After receiving such lease from the Utah Land Office containing the provision heretofore mentioned as Section 9, the defendant made a re-examination as to the legality of the lease and consulted experienced and capable counsel as to whether or not under the circumstances he was disqualified from receiving and holding such a lease under the provisions of Section 431, supra. Having concluded from his own investigations and those of legal counsel that he was not affected by the statutes involved he signed and returned the lease. Some time later the attention of the land manager of the Utah office was called to the situation and that official in correspondence with the defendant presumed to cancel the lease upon the ground that defendant was prohibited from receiving and holding it. The defendant thereupon in a series of lengthy correspondence asserted his views of the situation, maintaining that he was eligible under the statute, which, under the circumstances, he maintained did not apply to him. The manager of the Utah office, however, refused to accept the defendant's views and considered the protest or objection in the nature of an appeal and the same was sent to the Assistant Director of the Interior who affirmed the decision of the Utah official, subject to the right of appeal to the Secretary of the Interior. On appeal to that official the decision of the Utah manager and the Assistant Director was affirmed, whereupon the defendant decided to proceed no further but requested the Utah official to refund to him the rental deposited.

It would seem in the natural course of events that this would have been the end of the matter inasmuch as the Interior Department had established for the purposes of the case its contention that the defendant was an ineligible applicant for a lease of this character. However, regardless of the fact that the defendant had been deprived of any and all benefits of the lease and had elected not to pursue his contention further in the courts, evidently the Department of Justice felt that the facts would justify criminal proceedings against the defendant and accordingly an indictment was found, as cited above, under which the defendant was brought to trial.

It is asserted by the government that the defendant is guilty of the crime charged and subject to punishment provided in the statute as an intentional violator of the Act and should be punished accordingly. The defendant maintains that at all times involved the leasing act did not prohibit him from applying for and receiving the lease; that he was within the exemptions outlined in Section 433, supra, and that at all times he was acting in good faith and the belief that the statutes did not apply to him and that he was acting on the advice of able and skilled counsel in protecting his claims, coupled with the assertion that there is no showing of an intent on his part to commit a criminal act. Able counsel for both the government and the defendant have presented fully their views in their memorandum briefs but it would seem rather futile and useless for this judge to review extensively the various cases which have been cited tending to support their divergent contentions. Suffice it to say that counsel are to be commended for the excellent manner in which they have presented to the Court their views bearing upon the issues which are to be decided.

First, disposing of the rather technical defenses that the defendant did not knowingly execute or hold the lease as al-

leged in the indictment and that the Court is without jurisdiction, they will be rejected as not having proper foundation to rule the real issues in the case. It is suggested on behalf of the defendant that inasmuch as the Leasing Act itself did not prohibit Members of Congress from becoming applicants and holding leases under its terms they are not so restricted. I think this should likewise be rejected as the law under which the prosecution is brought, if applicable, is of long standing and should be held to control any leases in the future which fell within the limitations laid down by the Act of Congress. Doubt arises as to whether or not the Leasing Act itself is of such a nature that Members of Congress were prohibited from taking the benefits tendered. It is specific in regard to who might become applicants, non-competitive in its character, and apparently open to anyone who is a citizen of the United States and pays the fees required. In this respect it was somewhat like the descriptions of the exemptions enumerated in Section 433, supra, although it does contain matters which were to be carried out by the lessee if he continued to hold the property, either by paying rental, drilling the same, or assigning it. In Section 433, which purports to list the exemptions, it is noted that after the enumeration concerning the purchase or sale of bills of exchange or "other property" where the same are ready for delivery, etc., it is here contended by defendant that the so-called other property should include the type of lease in controversy. In this respect I am inclined to the view that this cannot be sustained under the doctrine of "ejusdem generis".

▉ Apparently the only case decided by the courts under this particular section of the law is United States v. Dietrich, 8 Cir., 126 F. 671, in an opinion written by Judge Van Devanter, later a Justice of the Supreme Court. It is singular in that both sets of counsel cite the case as sustaining their divergent contentions. The facts of that case, however, are so different than those in the case at bar that it can scarcely be held as an authority or solution for the problem before this Court. There a contract for the rental of a post office between the defendant and the United States was an issue. It was therefore an individual contract between the lessor and the government which continued to be held and from which he derived a direct profit and the Member of Congress was clearly within the prohibition of the statute and it was so held. In the case at bar the opportunity offered to the defendant was one of a general nature, open to anyone defined as eligible, non-competitive in its character and not entirely dissimilar to the offering of government bonds and other securities, including bills of exchange, clearly exempting members of Congress from its provisions. Aside from this single citation the balance of the cited authority is made up largely of opinions from heads of departments, Attorney Generals, and the like, under a varied set of circumstances.

So we are left with virtually no judicial construction of the statute which would specifically apply to the circumstances in this case. In effect it presents a situation which seems to be somewhat clouded in doubt. In addition is the doubt whether it was the intention of the Congress under all the circumstances to make the law applicable to a situation which we have before us. According to the Congressional Record, Congress is now discussing the matter of clarifying the law upon this identical point.

The question of intent on the part of the defendant enters strongly into the situation. It must be recognized that the old legal maxim that "ignorance of the law excuses no one" and likewise that the statute does not specifically require intent to be shown as is provided in many statutes of a criminal nature. It must also be recognized that as a general rule the reliance of a defendant upon the advice of counsel does not relieve a defendant of criminal liability. There have been, however, variances in the application of this latter rule, depending upon the circumstances of the individual case. In my own view it here ought to be at least recognized as one of

the elements of good faith on the part of the defendant and this was specifically mentioned in at least one of the reports of the officials of the Department through whose hands this controversy passed. Regardless of the rule that all defendants of whatever class and strata of life should be amenable to the law, only by the strictest technical legal construction can it be found that there was a criminal intent on the part of the defendant in this case to violate the law. He earnestly believed in his right to apply for and hold the lease under the provisions of the statute. He was and is a man of the highest type of character and occupies a position of honor and trust in the legislative department of the government and under these conditions and the entire surrounding circumstances to brand him as a man with a criminal intent to violate a law of his country seems to me to bring this case within the exception to the general rule, if there be any such exception. I am definitely inclined to the belief that under all these circumstances the defendant would never have been convicted by a jury of his peers and thereby branded as a criminal by a verdict of guilty. If the case were tried to a jury it could return its verdict without giving reasons or explanation for such action. The same duty having been imposed upon the Court by a waiver of jury it ought to follow that the Court has the same prerogative, although in the foregoing pages an attempt has been made to analyze the entire case and the issues involved so as to give the parties and their counsel the views which the Court entertains.

Whatever points have been presented in this litigation, I have a strong conviction that the statutes applied to the facts here presented leaves the matter shrouded in a degree of doubt as to their applicability, which, coupled with the fact that there is no actual showing of criminal intent under the particular circumstances on the part of the defendant, fully justifies the Court in rendering a verdict of not guilty and a judgment of acquittal.