**UNITED STATES of America,**

v.

**JACQUES DESSANGE, INC. and Howard Deutsch, Defendants.**

**No. S2 99 CR. 1182(DLC).**

United States District Court, S.D. New York.

June 28, 2000.

---

Peter G. Neiman, David N. Greenwald, Assistant United States Attorneys, Office of the United States Attorney, New York City, for U.S.

Steven Kimelman, John N. Nassikas III, Laura S. Lester, Arent Fox Kintner Plotkin & Kahn, Washington, DC, for Jacques Dessange, Inc.

## OPINION AND ORDER

COTE, District Judge.

Defendant Jacques Dessange, Inc. ("Dessange") moves for a judgment of acquittal or a new trial following its conviction by a jury on April 6, 2000. Dessange was convicted of one count of conspiring with, among others, co-defendant Howard Deutsch, its attorney on immigration matters, to submit false visa applications to the Immigration & Naturalization Service ("INS"), and of thirty-one counts of submitting false visa applications. For the following reasons, Dessange's post-trial motions are denied.

## BACKGROUND

Dessange is a New York corporation and wholly-owned subsidiary of a French company, Franklin Holding SA ("Franklin Holding"), which owns or licenses approximately 600 hair salons around the world. Prior to 1994, Dessange was Franklin Holding's only authorized American salon. Franklin Holding decided to expand its American operations and sent Yves Anthonioz ("Anthonioz") to Dessange in 1994, to oversee the expansion. Anthonioz, who was made the Vice President of Dessange, hoped to open as many as 100 salons in the United States by franchising the salons under the name "Jacques Dessange" in return for a licensing fee. Franklin Holding and Anthonioz formed a company named French Hair Style and Beauty Corporation ("FHSBC") to enter into franchise agreements with the licensees, to receive the licensing fees from these new salons, and to be the entity through which Jacques Dessange branded hair products would be sold in the United States.

Franklin Holding and Anthonioz understood that the franchisees would require hair stylists trained in the "Jacques Dessange method" to staff their salons, and Anthonioz promised prospective franchisees a steady supply of such foreign trained stylists. Anthonioz contacted Dessange's immigration attorney, Howard Deutsch, explained the need to bring foreign stylists into this country to work at the franchisees, and asked for his assistance. Between 1994 and 1997, Deutsch and his partner Libby Salberg helped scores of foreign stylists to enter the United States on L–1A visas to work at the franchisees, or in a few instances at Dessange itself. The L–1A visa allows for an intracompany transfer of a managerial or executive level employee from a company abroad to its affiliate or subsidiary in this country. The application for an L–1A visa is presented to the INS by the domestic employer, and in each instance, Anthonioz signed the visa application in his capacity as Vice President of Dessange.

The substantive counts on which Dessange was convicted reflect thirty-one separate visa applications, each of which contained one or more false statements. Almost all of the fabricated applications falsely represented that the employee would be working as a managerial employee at Dessange in New York. Dessange, and not the franchisees, was listed as the domestic employer since franchisees are not permitted to bring foreign employees into this country under the L–1A visa program; using the terminology in the regulations, a franchisee relationship with a foreign employer is not a "qualifying" relationship.

Starting in 1995, the INS periodically inquired about the visa applications submitted by Dessange. In response, and to support other applications, Anthonioz supplied Libby Salberg with false documentation, including organizational charts for Dessange showing multiple layers of managerial staff which had little or no relationship to reality. The jury was entitled to find, based not only on Anthonioz's admissions to the jury but also on substantial circumstantial evidence, that Anthonioz knew at the time he signed each L–1A visa application enumerated in the indictment's substantive counts that it contained false information.

In October 1997, the INS conducted a raid on a Jacques Dessange salon in Dallas, Texas; a raid on a Chicago, Illinois salon occurred in July 1999. During the investigation by the United States Attorney's Office which followed the Texas raid, Anthonioz initially lied to government investigators, but later decided to cooperate with the investigation. He returned to the United States from France for the trial and testified under a cooperation agreement that provided him with immunity from prosecution.

Dessange has first moved for a judgment of acquittal on the grounds that the evidence was insufficient to sustain the guilty verdicts against Dessange on all but one of the substantive counts on which it was convicted:[1] with respect to the conspiracy count, Dessange contends that there was insufficient evidence that Anthonioz entered into an agreement with another person to commit immigration fraud; with respect to all but one of the substantive false visa application counts, Dessange contends that there was insufficient evidence that Anthonioz intended to benefit Dessange, as opposed to himself, FHSBC, or the franchisees, when he submitted the false visa application to the INS. Next, Dessange moves for a judgment of acquittal or in the alternative for a new trial on the grounds that the charge on the substantive counts impermissibly amended the indictment by not including (1) the element of willfulness, or (2) an aiding and abetting charge. In the absence of a charge on willfulness, either as an element of the substantive crime or of an aiding and abetting charge, Dessange lost its right to its defense in connection with the substantive counts that it had relied on the advice of counsel. This defense was, however, included in the charge on the conspiracy count.

## DISCUSSION

■ A defendant seeking to overturn a conviction based upon insufficiency of the evidence bears a " 'heavy burden.' " *United States v. Walsh,* 194 F.3d 37, 51 (2d Cir.1999) (quoting *United States v. Martinez,* 54 F.3d 1040, 1042 (2d Cir.1995)). This Court must view the evidence in the light most favorable to the Government and draw all reasonable inferences in its favor, *see United States v. Autuori,* 212 F.3d 105, 117 (2d Cir.2000), deferring

> to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence.

*United States v. Morrison,* 153 F.3d 34, 49 (2d Cir.1998). The conviction may be overturned "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* *See also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This deferential standard is

> especially important when reviewing a conviction of conspiracy ... because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.

*United States v. Pitre,* 960 F.2d 1112, 1121 (2d Cir.1992) (internal quotations and citations omitted). Thus,

> [a] conviction for conspiracy must be upheld if there was evidence from which the jury could reasonably have inferred that the defendant knew of the conspiracy charged in the indictment and that he associated himself with the venture in some fashion, participated in it as something that he wished to bring about, or sought by his action to make it succeed.

*United States v. Podlog,* 35 F.3d 699, 705 (2d Cir.1994) (internal quotations omitted).

"[T]he court may grant a new trial to [a] defendant if the interests of justice so require." Rule 33, Fed.R.Crim.P. A new

---

1. Dessange does not contest that there was sufficient evidence to convict it on count twelve, which relates to a visa application for an employee of Dessange in New York.

trial should be granted when a jury has reached "a seriously erroneous result" or when the verdict is "a miscarriage of justice." *United States v. Landau,* 155 F.3d 93, 104 (2d Cir.1998). Although, in the exercise of its discretion, a court may weigh the evidence and credibility of witnesses, "the court may not wholly usurp the jury's role." *Autuori,* 212 F.3d at 120. Thus, "[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." *Id.* (internal quotation omitted).

### 1. Insufficient Evidence: Conspiracy Count

■ Dessange asserts without discussion that there was insufficient evidence to convict it of conspiring with one or more other persons to submit false visa applications. As described in the Government's opposition to this motion, however, there was ample evidence of the conspiracy. Anthonioz testified that he knew that the visa applications that he was signing contained false information. Both he and Libby Salberg described for the jury their conversations and work over the course of several years to obtain the visas from the INS by the regular preparation and submission of the falsified applications. There were many documents received in evidence which corroborated their description of these events and of the role played by co-defendant Howard Deutsch, Salberg's senior law partner, in designing the scheme and in intervening at critical junctures when the scheme was unraveling. This portion of Dessange's motion can be swiftly rejected.

### 2. Insufficient Evidence: Substantive Counts

Dessange challenges its conviction on all but one of the substantive counts by arguing that there was insufficient evidence

that Anthonioz acted with intent to benefit it. Dessange argued this point to the jury in its summation. The jury rejected it, and had ample evidence to do so.

The Court charged the jury that Dessange, as a corporate entity, could only act through its agents, for example, its officers and employees. The charge explained that

> [a]ny act or omission of an officer or supervisory employee within the scope of his employment is the action or omission of the employer for which the corporation may be held criminally liable. An act or omission is within the scope of employment if it is sufficiently related to the duties that the individual was employed to perform, if it was done substantially within the time and space limits of the job, and was motivated, at least in part, by a purpose to serve or benefit the corporation. If you find that the officer or supervisory employee was acting within the scope of his employment, the fact that his act was illegal, contrary to his employer's instructions, or against [the] corporation's policies will not relieve the corporation of responsibility for it. You may consider the fact that the individual disobeyed instructions or violated company policy, however, in determining whether the individual intended to benefit the corporation or was acting within the scope of his employment. If the act or omission meets these requirements, there is no additional requirement that the act or omission be formally authorized by the corporation.

■ This charge provided the jury with the law regarding corporate liability reflected in *United States v. Paccione,* 949 F.2d 1183, 1200 (2d Cir.1991), *United States v. Ingredient Technology Corporation,* 698 F.2d 88, 90 (2d Cir.1983), *United States v. Demauro,* 581 F.2d 50, 53, 54 n. 3 (2d Cir.1978), and *Pollack v. Laidlaw Holdings, Inc.,* 90 Civ. 5788, 1995 WL 634841 (S.D.N.Y. Oct.30, 1995) (DLC).[2]

**2.** The Court advised the parties during the charging conference that these were the cases

on which it was relying.

The conviction of a corporate defendant will stand where the evidence is sufficient to permit a rational juror to infer beyond a reasonable doubt that a supervisory employee's actions "were for the benefit of and authorized by" the company. *Paccione*, 949 F.2d at 1200. In addition, this analysis is consistent with the cases relied upon by Dessange, including *Standard Oil Co. v. United States*, 307 F.2d 120, 125 (5th Cir.1962).[3]

■ Dessange contends that Anthonioz did not intend to benefit Dessange, but only himself, FHSBC, and the licensees when he used his position at Dessange to bring stylists into the United States. The jury was entitled to find otherwise based on the evidence at trial. The undisputed evidence was that the expansion of the enterprise in America involved opening salons named "Jacques Dessange" in major cities across the country. It was also undisputed at trial that the successful franchising of salons named Jacques Dessange depended on bringing stylists trained in the "Jacques Dessange method" into the country. The jury was entitled to find based on the evidence admitted at trial that the development of the Jacques Dessange brand name in this country would inure to the benefit of the defendant—the New York corporation and salon—and that it was intended by Anthonioz to benefit that company, as well as himself and the other parts of the organization. Anthonioz said as much in his testimony: "I think the group overall would benefit, and all those who worked for it, including me." Moreover, Mr. Jacques Dessange, who testified

as a defense witness, corroborated Anthonioz's testimony. Among other things, Mr. Jacques Dessange testified that in 1994, he reached an agreement with Anthonioz "to develop the company Jacques Dessange Inc. in the United States;" that bringing French hairdressers to the United States was "absolutely" within Anthonioz' responsibilities; and that it was within the scope of Anthonioz' authority to decide which company—FHSBC or Dessange—to use to bring the hairdressers to the United States.

### 3. The Elements of a Section 1546 Violation

Dessange contends that its Fifth Amendment rights were violated at trial by an effective amendment of the indictment in the charge on Section 1546 of Title 18, United States Code, which is the statute underlying the thirty-one substantive counts as well as the conspiracy count on which Dessange was convicted. Dessange contends that a violation of Section 1546 requires not only knowing conduct (which was included in the charge given the jury), but also willful conduct (which was not included in the charge). There appear to be two prongs to this argument. Dessange argues that willfulness is a part of the *mens rea* of a Section 1546 violation, and alternatively, that even if it is not an element of the violation, Dessange was entitled to have this charge since the word "willful" was included in the indictment. The indictment charged in both the conspiracy count and the substantive Section

**3.** Dessange has not based its post-trial motions on any contention that this charge was in error, however, it did object to this portion of the charge during the charging conference and notes in its post-trial motion papers that it continues to assert that the charge was in error. Dessange argued at trial that the Court's proposed charge "conflated" the scope of employment with the intent to benefit the corporation and therefore did not clearly delineate what it contends are two separate prongs of the corporate responsibility test. The Court rejected the defendant's proposed charge on multiple grounds. First,

the intention to benefit the corporation is clearly stated and is an essential part of the very definition of "acting within the scope of employment." Second, the Court's charge placed a higher burden on the Government than in the change to the charge proposed by Dessange. Dessange requested, *inter alia,* that the Court instruct the jury that an act or omission is within the scope of employment if it is sufficiently related to the duties the individual was employed to perform "or" if it was done substantially within the time and place limits of the job.

1546 counts that the defendant had acted "unlawfully, *willfully*, and knowingly" (emphasis supplied).

■ An indictment is constructively amended

when the proof at trial broadens the basis of conviction beyond that charged in the indictment. Constructive amendment of an indictment is a *per se* violation of the grand jury clause of the Fifth Amendment.

*United States v. Danielson*, 199 F.3d 666, 669 (2d Cir.1999) (internal quotation omitted). An impermissible alteration of the charge must affect an essential element of the offense, however, and thus significant flexibility in proof is permissible, so long as the defendant was provided with notice of the core of criminality to be proven at trial. *United States v. Patino*, 962 F.2d 263, 265–66 (2d Cir.1992).

Constructive amendment occurs when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.

*United States v. Wallace*, 59 F.3d 333, 337 (2d Cir.1995) (internal quotation omitted). The "critical determination" is whether the allegations· and the proof " 'substantially correspond.' " *Danielson*, 199 F.3d at 670 (quoting *Patino*, 962 F.2d at 266).)

■ The Government was not required to prove a willful violation of Section 1546. To begin with, the statute itself only requires proof that the defendant acted "knowingly." Title 18, United States Code, Section 1546 provides in relevant part that

[w]hoever *knowingly* makes under oath, or ... under penalty of perjury ... *knowingly* subscribes as true, any false

statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or *knowingly* presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact

shall be guilty of a crime. 18 U.S.C. § 1546 (emphasis supplied).[4] Moreover, the general rule in criminal cases is that "ignorance· of the law or a mistake of law is no defense." *Cheek v. United States*, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). *See also United States v. Gabriel*, 125 F.3d 89, 101 (2d Cir.1997). Consequently, there is no general requirement that the Government prove that a defendant acted willfully, that is, with an intent to violate a known legal duty, or in bad faith, or with an evil intent. *See Cheek*, 498 U.S. at 200, 111 S.Ct. 604. In addition, "[j]udge-made exceptions to the plain meaning of a statute are not lightly undertaken," *United States v. Wiener*, 96 F.3d 35, 38 (2d Cir.1996), and therefore courts must follow congressional intent as to the required level of mental culpability for any particular offense. *United States v. Scotti*, 47 F.3d 1237, 1245 (2d Cir.1995). Generally, unless Congress has indicated otherwise, "knowingly" merely requires "proof of knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 193, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998). *See also United States v. Hopkins*, 53 F.3d 533, 537–41 (2d Cir.1995) (discussing *mens rea* requirement of 33 U.S.C. § 1319(c) and distinguishing "knowing" from "willful"); *Scotti*, 47 F.3d at 1245 (declining to read a mental state of purpose or specific intent into 18 U.S.C. § 894(a)(1) where statute expressly specifies that the participation in the extortion need only be "knowing[ ]"). One who submits a document to the INS knowing that

4. The jury was instructed that the final clause of this statute—"or which fails to contain any reasonable basis in law or fact"—was added

on September 30, 1996, and therefore only applied to visa applications filed after that date.

it contains a false statement has sufficient knowledge to recognize that he or she has not engaged in an innocent act. *See United States v. Sanders*, 211 F.3d 711, 723 (2d Cir.2000) (construing intent element of 49 U.S.C. § 1155(b)).

Dessange cannot claim any surprise about the elements of a Section 1546 violation since its own requests to charge omitted any mention of a willfulness requirement. In its March 16, 2000 requests to charge, submitted on the eve of trial, Dessange listed the elements of a Section 1546 violation as follows:

> First, that Jacques Dessange, Inc. knowingly made a material false statement under oath;
>
> Second, that Jacques Dessange, Inc. made the statement voluntarily and intentionally; ...
>
> A false statement is made "knowingly" if Jacques Dessange, Inc. knew that it was false or demonstrated a reckless disregard for the truth with a conscious purpose to avoid learning the truth....
>
> Before you can find that Jacques Dessange, Inc. acted intentionally, you must be satisfied beyond a reasonable doubt that it acted deliberately and purposefully. That is, the company's acts must have been the product of its conscious objective rather than the product of a mistake or accident.

Dessange cited as authority for this request the pattern jury instructions from the First Circuit and 1 L. Sand, et al., Modern Federal Jury Instruction, Instruction Nos. 3–10 & 3A–4 (1999), neither of which lists willfulness as an element of the crime.[5]

Dessange's position on the elements of a Section 1546 charge only changed mid-trial. The Court advised the parties on March 28, 2000, that it had reached the conclusion that willfulness was not an element of a Section 1546 violation and that, as a consequence, the defense of reliance on advice of counsel was unavailable for the substantive counts.[6] The Court then invited submissions from the parties addressed to these issues. Thereafter, on April 3, 2000, Dessange submitted a revised request to charge for Section 1546, which for the first time listed willfulness as an element of the crime.[7] In support of this revised charge Dessange cited *United States v. Pasillas–Gaytan*, 192 F.3d 864 (9th Cir.1999), and *United States v. Diogo*, 320 F.2d 898 (2d Cir.1963). Neither case supports the inclusion of a willfulness requirement in Section 1546. In *Pasillas–Gaytan*, the defendant appealed his conviction under 18 U.S.C. § 1425, which makes it a crime to "knowingly procure, contrary to law" naturalization, on the grounds that his misrepresentation to the INS regarding his criminal record was due to his poor understanding of English and therefore lacked the necessary element of *mens rea*. The Ninth Circuit, after noting the "general rule" that the defendant does not have to know that his conduct is illegal, declined to impose a willfulness requirement, and held that the statute "should be construed with the usual presumption that a defendant must know *the facts* that make his conduct illegal." *Pasillas–Gaytan*, 192 F.3d at 868 (internal quotation omitted) (emphasis supplied). The Ninth Circuit's opinion cannot be read as suggesting that the defendant must be aware that his conduct was "willful" in the sense of violating

---

**5.** Unlike Dessange's requests to charge, the Government's requests did include willfulness as an element of a Section 1546 violation.

**6.** On March 28, 2000, the Court shared with the parties its view that the *"mens rea* requirement for th[e] thirty-one false statement counts is simply knowingly and has no willful component." On April 3, 2000, the Court explained to the parties that it was relying on

*Cheek, Gabriel, Hopkins,* and *Scotti* for its *mens rea* analysis, and offered citations to the relevant portions of those opinions.

**7.** Dessange defined "willfully" as acting with knowledge that conduct is unlawful and with intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law.

a known legal duty. As to Dessange's reliance on *Diogo,* the entirety of analysis on the elements of Section 1546 is the Second Circuit's oblique statement that "acts sufficient to constitute violation of the relevant clause of 18 U.S.C. § 1546 will also constitute a violation of 18 U.S.C. § 1001." *Diogo,* 320 F.2d at 902. While the text of Section 1546 as quoted in a footnote demonstrates that the statutory language omits the willfulness requirement explicitly included in Section 1001, the remainder of the *Diogo* opinion analyzes only the requirements of Section 1001. This Court thus finds that the *dicta* in *Diogo* offers insufficient guidance to be determinative on the elements of Section 1546 standing alone.

 Nor is Dessange entitled to a charge that imposes an additional element to the crime charged in Section 1546 merely because the indictment lists that additional element. The law is clear that

> while it is the Government's burden to prove the essential elements of a charged crime, allegations in an indictment that go beyond the essential elements which are required for conviction do not increase the Government's burden.

*United States v. Jespersen,* 65 F.3d 993, 1001 (2d Cir.1995) (internal citation omitted). *See also United States v. Rosenthal,* 9 F.3d 1016, 1023 (2d Cir.1993) (permissible to omit "false and fraudulent" charge although such language was included in the indictment). The grand jury clause of the Fifth Amendment is not violated where, as here, the defendant's complaint is "'not that the indictment failed to charge the offense for which he was convicted, but that the indictment charged more than was necessary.'" *Rosenthal,* 9 F.3d at 1022 (quoting *United States v. Miller,* 471 U.S. 130, 140, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985)). Dessange's citation of district courts holding to the contrary, *see United States v. McMillan,* 114

F.Supp. 638 (D.D.C.1953); *United States v. Quinn,* 116 F.Supp. 802, 803 (E.D.N.Y. 1953), is not persuasive.

In sum, Section 1546 makes it unlawful knowingly to submit a visa application containing materially false statements. It does not require proof that such conduct is also willful, or an intentional violation of a known legal duty. Consequently, the charge on the elements of Section 1546 correctly described the applicable law.

**4. The Absence of a Charge on Aiding and Abetting**

Dessange contends that its rights under both the Fifth and Sixth Amendments were violated when the Government indicated that it did not wish to proceed on an aiding and abetting theory with respect to the substantive Section 1546 counts. Under the terms of 18 U.S.C. § 2, "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Because, to be convicted of aiding and abetting, the defendant must have taken some conscious action that furthered the commission of the underlying crime, an aiding and abetting charge would require the jury to find that Dessange "either acted or failed to act with the specific intent of advancing the commission of the underlying crime." *United States v. Pipola,* 83 F.3d 556, 562 (2d Cir.1996). *See also Scotti,* 47 F.3d at 1245 ("We do not find it problematic that, in a seeming paradox, it is easier to prove principal liability under [a statute that 'only requires knowledge'] than aiding and abetting under 18 U.S.C. § 2 ... [which] requires a finding of specific intent or purpose to bring about the crime."). Because of such heightened *mens rea,* Dessange would have been entitled to a charge in connection with the substantive counts that it had relied on the advice of counsel if the aiding and abetting theory had been presented to the jury.[8] Dessange argues

8. Dessange admits in its post-trial motions

that the defense of reliance on the advice of

that the exclusion of the aiding and abetting theory impermissibly broadened the basis on which it could be convicted, in violation of the Fifth Amendment, and deprived it of its right to be informed of the nature of the accusation against it, in violation of the Sixth Amendment.

Counts Two through Thirty–Two of the indictment—the Section 1546 counts—cited both Section 1546 and Section 2 in a parenthetical at the end of the counts. The Government's requests to charge submitted prior to trial, however, did not contain a request for an aiding and abetting charge either in connection with the requests dealing directly with Section 1546 or in the "general requests". On April 3, 2000, the Court informed the parties of its intention to charge, on the issue of *mens rea*, only the element of knowledge as to the counts of immigration fraud. The Court indicated, however, that because accessorial liability did require a willfulness component, the jury would be instructed on an advice of counsel defense if that theory went to the jury. The Government thereupon indicated that it did not wish to proceed on an aider and abettor theory, and Dessange did not object.[9] Despite Dessange's argument that the Government withdrew the aiding and abetting theory "for the sole purpose of denying [Dessange] its defense of advice of counsel," the Government notes an equally plausible alternative rationale: eliminating an unnecessary and potentially confusing theory in light of the overwhelming trial evidence supporting principal liability.[10]

Because the Government indicated that it did not wish to proceed on an aiding and abetting theory, such a charge was not submitted to the jury and the Court specifically instructed the jury that they could not consider the defense of reliance on the advice of counsel in connection with the substantive Section 1546 counts. The jury was, however, given a charge on this defense in connection with Count One—the charge that Dessange had conspired to violate Section 1546—and Dessange urged this defense upon the jury in its summation. The jury convicted Dessange on both the conspiracy and substantive counts.

■ There has been no violation of Dessange's constitutional rights. Even if an aiding and abetting charge had been given to the jury, the Government would have been entitled to an instruction that the defense of reliance on advice of counsel related only to the aiding and abetting theory and not to the violation of the statute by Dessange acting as a principal. It is merely semantics to argue that the decision not to proceed at trial on the aiding and abetting theory broadened the basis on which Dessange could be convicted.

Dessange argues that its failure to object at trial to the Government's withdrawal of the aiding and abetting theory should not be held against it since it requested at trial that the charge on Section 1546 include the element of willfulness. The issue of the statutory elements of Section 1546 is an entirely separate issue from the withdrawal of an aiding and abetting theory, however, and did not implicate the constitutional arguments regarding the broadening of the indictment now belatedly presented by Dessange.

Nor has Dessange succeeded in identifying any prejudice it suffered from the Government's decision not to submit an aiding

counsel is only available where the crime includes an element of willfulness. *See, e.g., Cheek,* 498 U.S. at 202, 111 S.Ct. 604; *United States v. Remini,* 967 F.2d 754, 757 (2d Cir. 1992).

**9.** Dessange argued that the Government's decision to exclude the aider and abettor theory strengthened the argument that Anthonioz's actions could not be characterized as benefit-

ting Dessange, but did not object to the Government's decision.

**10.** In any event, Dessange offers no legal argument for the proposition that prosecutorial intent is relevant to the determination of whether an indictment was constructively amended.

and abetting theory to the jury. As reflected in the requests to charge Dessange submitted prior to trial, it understood that there was no requirement under Section 1546 that the Government prove its willfulness. Even if Dessange failed to realize at that time that the defense of reliance on advice of counsel was only relevant when the issue of willfulness was before the jury, its failure to understand that issue of law cannot constitute prejudice. Second, Dessange was permitted to present this defense in full to the jury and it remained relevant to the jury's deliberations on the conspiracy count. Third, it is not accurate to suggest that the bulk of the "at times competing defenses" centered on the existence of this defense.[11] Co-defendant Deutsch's principal defense was to point to Libby Salberg as the attorney who had performed almost all of the legal work in connection with the visas. Anthonioz had only a few conversations of substance with Deutsch; almost all of his contacts regarding the visas were with Salberg. Therefore, Deutsch's defense did not require any significant attack on Anthonioz, as is clear from the summation his attorney delivered on his behalf.

The bottom line is that Dessange was not entitled as a matter of law to a charge on this defense in connection with the substantive counts. Consequently, its constitutional rights were not violated when the charge on this defense was confined to the conspiracy count.

## CONCLUSION

For the reasons stated, Dessange's post-trial motions are denied.

SO ORDERED:

---

**11.** Nor does this argument suggest that the trial of these defendants should have been severed. As the Court discussed in its March 13, 2000 Opinion, severance depends on the showing that a "specific trial right" has been compromised, or that the joint trial prevented the jury from making a reliable judgment about guilt or innocence. *See Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Dessange has failed to make such a showing.