## UNITED STATES of America, Plaintiff–Appellee,

v.

## Jose PASILLAS–GAYTAN, Defendant–Appellant.

### No. 98–30303.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 14, 1999

Memorandum Filed Sept. 2, 1999

Order and Opinion Filed Sept. 16, 1999

Thomas Monaghan, Assistant Federal Public Defender, Yakima, Washington, for the defendant-appellant.

Jane Kirk, Assistant United States Attorney, Yakima, Washington, for the plaintiff-appellee.

Before: REAVLEY,* ALARCON and McKEOWN, Circuit Judges.

## ORDER

The memorandum disposition filed September 2, 1999, is redesignated as an authored opinion by Judge Reavley.

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation.

## OPINION

REAVLEY, Circuit Judge:

Jose Gaytan–Pasillas (Gaytan) appeals his conviction for unlawful procurement of naturalization. Because we agree with him that the jury was improperly instructed on the *mens rea* requirement for this crime, we reverse. And because we conclude that he proved his defense in obtaining a verdict on the companion count, we order an acquittal.

## BACKGROUND

Gaytan was charged in a two-count indictment. Count 1 alleged that, on or about December 7, 1995, the date of his naturalization interview, in violation of 18 U.S.C. § 1546(a), Gaytan knowingly made a false statement of material fact in his application for naturalization, by representing that he had never been convicted of a crime other than a motor vehicle infraction, when in fact he had been convicted of second-degree theft. Count 2 alleged that Gaytan, in violation of 18 U.S.C. § 1425, "knowingly procured, contrary to law," his naturalization, because the theft conviction made him ineligible for naturalization.

Gaytan does not dispute that he had been convicted of theft, and that he misrepresented that he had no such conviction in his application for naturalization and in his interview with the INS. At trial he stipulated to the prior conviction, its materiality, and his resultant ineligibility for naturalization. His defense was that the misrepresentations were innocent mistakes, due to his poor understanding of English and limited education. A minister testified that she had filled out part of the naturalization application for Gaytan, and that his English was very limited. A teacher and Gaytan's girlfriend testified that Gaytan's English language skills were limited. Gaytan also testified, through an interpreter, that he had trouble understanding the questions in the application and at the interview, and did not know

that his prior conviction precluded him from becoming a citizen.

In instruction 15, the court instructed the jury:

The defendant is charged in Count 2 of the indictment with unlawfully obtaining his naturalization in violation of the laws of the United States. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, that from on or about October 19, 1995, through December 13, 1995, in Walla, Walla, Washington, the defendant knowingly acquired naturalization; and

Second, the defendant's naturalization was contrary to law in that the defendant claimed he had never been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance other than for no operator's license when in fact the defendant was convicted of theft in the second degree on March 9, 1992.

The next instruction explained that Gaytan's theft conviction "rendered the defendant ineligible for naturalization."

Gaytan's counsel objected to instruction 15, on grounds that the *mens rea* requirement was misstated. The court overruled this objection. During deliberations, the jury sent out two questions regarding the instructions on count 2 (§ 1425). First, it asked: "Inst. # 15 2nd question (3rd paragraph)—Is the defendant's naturalization contrary to law dependent on his 'claim' that he was never arrested *or* is it contrary to law because of his conviction?" The court instructed the jury: "Please refer to Instruction No. 16 which states as follows: 'This conviction rendered the defendant ineligible for naturalization.'" In effect, the court instructed the jury that the prior conviction, by itself, rendered the naturalization "contrary to law" under § 1425, regardless of what Gaytan had represented or his state of mind in making representations. The jury then asked:

"Does the defendant's intent have *ANY* bearing on *Count 2 (* second element) of the indictment?" The court responded: "The requirements for conviction under the two different counts is made clear by a reading of the instructions." The district court did not advise defense counsel of these questions or consult with counsel before issuing its answers.

Gaytan was convicted on count 2 and acquitted on count 1.

## DISCUSSION

Section 1425(a) provides that "[w]hoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship" shall be guilty of the offense.

■ The jury was instructed that the elements of § 1425 were that Gaytan "knowingly acquired naturalization," and that this naturalization was contrary to law. The jury was further instructed that his naturalization was contrary to law because of the theft conviction. Since applying for naturalization, absent the oddest circumstances, is necessarily a knowing act, the jury charge essentially made § 1425 a strict liability offense, one which imposes criminal liability without regard to the defendant's state of mind at the time he sought naturalization. The government argues that the charge correctly stated the law because § 1425 is a "public welfare" statute which does not have a culpable state of mind requirement. Gaytan appears to argue that the statute requires that he knew that applying for naturalization given his prior conviction was itself a criminal act. For example, he complains on appeal that "[t]he court did not instruct the jury that it needed to find that Mr.

Gaytan knew that his procurement of naturalization was illegal." Stated another way, he contends that criminal liability under § 1425 requires proof that the defendant was familiar with that statute. We cannot agree with either position.

■ First, we cannot agree with Gaytan that the government had to prove that he knew that applying for naturalization with the prior conviction was illegal. The general rule in the criminal law is that the defendant does not have to know that his conduct is illegal; hence the expression that "ignorance of the law is no excuse." "The rule that 'ignorance of the law will not excuse' is deep in our law...." [1]

The Supreme Court recognized "the venerable principle that ignorance of the law generally is no defense to a criminal charge" in *Ratzlaf v. United States*.[2] Nevertheless, it held that in 31 U.S.C. § 5322, applicable to structuring financial transactions to avoid federal reporting requirements, Congress decreed otherwise and required proof that the defendant knew the structuring was illegal. This decision rested on the fact that the statute applies to a person "*willfully* violating" the antistructuring provision, and the Court's conclusion that "currency structuring is not inevitably nefarious."[3] The Court noted authority that "willful" implies a violation of a known legal duty.[4]

■ Similarly, in *Bryan v. United States*,[5] the Court held that a conviction under 18 U.S.C. § 924(a)(1)(D) for "willfully" dealing in firearms without a license requires proof that the defendant knew his conduct was unlawful, but does not require proof that the defendant was aware of the specific licensing requirement that is the

---

**1.** *Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (citation omitted).

**2.** 510 U.S. 135, 149, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).

**3.** *Id.* at 144, 114 S.Ct. 655.

**4.** *See id.* at 142, 114 S.Ct. 655.

**5.** 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998).

basis of his indictment and conviction.[6] The Court distinguished statutes which only require "knowing" conduct. Such statutes "merely require[ ] proof of knowledge of the facts that constitute the offense," as opposed to knowledge that the conduct is unlawful.[7] In *United States v. International Minerals & Chemical Corp.*,[8] the Court construed a statute providing that whoever "knowingly violates" certain regulations of the Interstate Commerce Commission (ICC) was guilty of a criminal offense. The defendant was convicted of shipping acid without complying with an ICC reporting requirement. The Court held that ignorance of the reporting requirement was not a defense, finding no congressional intent to "carv[e] out an exception to the general rule that ignorance of the law is no excuse."[9] Because § 1425 requires only "knowing" conduct, rather than imposing the stricter "willful" requirement, we hold that Gaytan did not have to know that procuring naturalization was a criminal act, although such knowledge would of course suffice to impose criminal liability.

■ On the other hand, we cannot agree with the government that § 1425 imposes no *mens rea* requirement, other than the requirement of intentionally applying for naturalization. As explained above, applying for naturalization is almost always a voluntary, intentional act. We believe that the statute requires a culpable state of mind as well. The government's construction of the statute would criminalize completely innocent conduct and would essentially impose strict liability on defen-

dants. It would apply to defendants who did not understand the documents they were signing, as Gaytan claims. It would also apply to those who innocently apply for citizenship outside of the statutory time periods for making such application, and those who innocently apply for citizenship but are not sufficiently proficient in the English language to qualify for citizenship. The general rule is that criminal statutes do not impose strict liability. "Such 'strict liability' crimes are exceptions to the general rule that criminal liability requires an 'evil-meaning mind.' "[10] Even the complete omission of a *mens rea* requirement does not mean that the statute "defines a 'strict liability' crime for which punishment can be imposed without proof of any *mens rea* at all."[11] "The existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence."[12]

■ Following our understanding of *Staples v. United States*,[13] we hold that the statute should be construed with "the usual presumption that a defendant must know the facts that make his conduct illegal."[14] We conclude, consistently with other circuits, that liability under § 1425 requires proof that Gaytan either knew he was not eligible for naturalization due to his prior conviction,[15] or knowingly misstated his criminal record on his application or in his interview. At issue in *Staples* was the *mens rea* requirement under 26 U.S.C. § 5861(d), which criminalizes possession of an unregistered machine gun. The defendant claimed that he did not know the gun he bought was capable of

---

**6.** *See* 118 S.Ct. at 1944–47.

**7.** *Id.* at 1946.

**8.** 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971).

**9.** *Id.* at 563, 91 S.Ct. 1697.

**10.** *United States v. Bailey*, 444 U.S. 394, 404 n. 4, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

**11.** *Id.* at 406 n. 6, 100 S.Ct. 624.

**12.** *Dennis v. United States*, 341 U.S. 494, 500, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

**13.** 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994).

**14.** *Id.* at 619, 114 S.Ct. 1793.

**15.** *See United States v. Moses*, 94 F.3d 182, 184 (5th Cir.1996) (stating that a violation of § 1425(b) requires proof that "the defendant knows that he or she is not entitled to naturalization or citizenship").

automatic fire. The Court held that violation of the statute requires proof that the defendant knew the rifle was an automatic weapon.[16] It noted the "conventional *mens rea* element" of criminal statutes, which requires "that the defendant know the facts that make his conduct illegal."[17] The Court also noted "the particular care we have taken to avoid construing a statute to dispense with *mens rea* where doing so would 'criminalize a broad range of apparently innocent conduct.'"[18] It declined to "impose criminal sanctions on a class of persons whose mental state-ignorance of the characteristics of weapons in their possession-makes their actions entirely innocent."[19] By this reasoning it is not enough that Gaytan submitted a naturalization application with false information. Just as the defendant in *Staples* had to know that the gun was an automatic weapon, the government should have been required to prove that Gaytan either knew he was ineligible for naturalization due to his criminal record, or knowingly misrepresented his criminal record in his application or interview.

We cannot agree with the government that § 1425 is a "public welfare" statute which lacks a *mens rea* requirement. In *Staples*, the Court recognized such statutes, but declined to treat the firearm statute in question as a public welfare statute. It noted that public welfare statutes were a narrow class, limited to "stat-utes that regulate potentially harmful or injurious items"[20] or "some dangerous or deleterious substance."[21] Section 1425, in our view, does not fall within this category. In *Staples*, the Court also noted that with public welfare statutes, "'penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation.'"[22] "[A] severe penalty is a further factor tending to suggest that Congress did not intend to eliminate a *mens rea* requirement."[23] Section 1425 imposes a sentence of up to 25 years, and up to 10 years if the offense was not committed to facilitate another offense. Conviction also results in a revocation of citizenship.[24] Were we to dispense with a *mens rea* requirement, "we would be left with a statute that exposes persons who perform innocent acts to lengthy prison sentences."[25] We decline to do so.

■ The district court erred in misstating, and essentially omitting, the *mens rea* requirement that we hold is an essential element of the crime. The omission of an essential element of the crime is subject to harmless error review,[26] which in this context means that the conviction can stand if the error was harmless beyond a reasonable doubt.[27] If the error is not harmless, the ordinary remedy is to remand the case for a new trial.[28]

■ In the pending, case, however, we are convinced that the record as a whole

---

**16.** *See Staples*, 511 U.S. at 619, 114 S.Ct. 1793.

**17.** *Id.* at 605, 114 S.Ct. 1793.

**18.** *Id.* at 610, 114 S.Ct. 1793 (quoting *Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)).

**19.** *Id.* at 614–15, 114 S.Ct. 1793.

**20.** *Id.* at 607, 114 S.Ct. 1793.

**21.** *Id.* at 607 n. 3, 114 S.Ct. 1793.

**22.** *Id.* at 617–18, 114 S.Ct. 1793 (quoting *Morissette v. United States*, 342 U.S. 246, 256, 72 S.Ct. 240, 96 L.Ed. 288 (1952)).

**23.** *Id.* at 618–19, 114 S.Ct. 1793. *See also United States v. Nguyen*, 73 F.3d 887, 891 n. 1

(9th Cir.1995) (noting that public welfare offenses generally are ones "where the penalty is relatively small, [and] where conviction does not gravely besmirch" (internal quotation marks omitted)).

**24.** *See* 8 U.S.C. § 1451(e).

**25.** *Nguyen*, 73 F.3d at 893.

**26.** *See Neder v. United States*, —— U.S. ——, ——, 119 S.Ct. 1827, 1831, 144 L.Ed.2d 35 (1999).

**27.** *See Id.* at ——, 119 S.Ct. at 1837.

**28.** *See, e.g., United States v. Perez*, 129 F.3d 1340, 1342 (9th Cir.1997); *United States v. Alerta*, 96 F.3d 1230, 1236 (9th Cir.1996); *Nguyen*, 73 F.3d at 895.

and the jury's findings establish that not only was the error not harmless, but the jury necessarily would have acquitted Gaytan on count 2 if it had been properly instructed. As explained above, Gaytan stipulated that he had a prior theft conviction, that this conviction was material to the INS, and that the conviction made him ineligible for naturalization. The evidence was undisputed that his application falsely denied a prior criminal conviction in question 15 and that agent Walker repeated this question orally to him at his interview on December 7, 1995. Gaytan did not disclose the theft conviction, but only disclosed the motor vehicle infraction. Therefore, the only disputed factual issue for the jury to decide under the instructions as to count 1 was whether "the defendant knew the statement was false." The acquittal on count 1 necessarily means that the jury failed to find that Gaytan knowingly misstated his criminal record.

As discussed above, the requisite intent element of § 1425 can be established by proof that (1) Gaytan knowingly misrepresented his criminal record at his interview, (2) he knowingly misstated his criminal record in his written application, or (3) regardless of his representations to the INS, he knew he was ineligible for naturalization. Of these three possibilities, the acquittal on count 1 necessarily meant that the jury rejected the first two possibilities. The questions from the jury, discussed above, further confirm that the only explanation for the acquittal on count 1 and conviction on count 2 was a jury determination that Gaytan did not intentionally misrepresent his criminal record. That determination left the record devoid of any evidence of the third possibility. Gaytan cannot be retried.

Accordingly, the judgment is reversed and the conviction is vacated.

REVERSED and VACATED.