**UNITED STATES of America,**
**Appellee,**

v.

**Fadi ALAMEH, Defendant–Appellant.**

**Docket No. 02–1514.**

United States Court of Appeals,
Second Circuit.

Argued: July 17, 2003.

Decided: Aug. 22, 2003.

Michael G. McGovern, Assistant United States Attorney for the Southern District of New York, for James B. Comey, United States Attorney for the Southern District of New York (Meir Feder, Assistant United States Attorney, on the brief), for Appellee.

Michael S. Pollok, New York, N.Y. (David Tolchin, on the brief), for Defendant–Appellant.

Before: CALABRESI, RAGGI, and WESLEY, Circuit Judges.

CALABRESI, Circuit Judge.

On August 21, 2002, after a bench trial before Judge Kimba M. Wood of the United States District Court for the Southern District of New York, defendant Fadi Alameh was convicted of one count of unlawful procurement of naturalization in violation of 18 U.S.C. § 1425(b). On appeal, the defendant challenges this conviction on multiple grounds, claiming 1) that the stat-

ute of limitations had expired by the time the indictment was filed, 2) that the district court erred a) by not permitting pre-trial discovery to establish whether the government was selectively prosecuting the defendant based upon his Arab ethnicity and b) in concluding that the government did not selectively prosecute the defendant based upon his Arab ethnicity, 3) that there was insufficient evidence at trial to establish that the defendant knowingly violated the statute, 4) that the district court erred by not making sufficient findings of fact as required by Rule 23(c) of the Federal Rules of Civil Procedure, 5) that the indictment should be dismissed because of pre-indictment delay, 6) that the statute under which the defendant was convicted was unconstitutionally vague, and 7) that the district court erred in permitting the testimony of an alleged co-conspirator. We affirm the judgment below.

## I. Background

Defendant came to the United States from Lebanon in 1983 on a student visa, and was denied reinstatement of student status in 1985. The INS issued an Order to Show Cause why he should not be deported, and shortly thereafter Mr. Alameh married Ana Margarita Aviles, an American citizen. In December 1985, Alameh applied for status as a lawful permanent resident (LPR) based on his marriage to Aviles, and in March 1986 that status was granted.

In September 1989, Alameh filed a petition for naturalization claiming that he had been married to a U.S. citizen for three or more years. He abandoned this petition after an INS interview in which he was instructed to return with "evidence of marital union." Alameh and Aviles divorced in August 1990. In February 1991, Alameh filed another application for citizenship,

this time relying on the fact that he had held a green card for five years or more. He was granted a certificate of naturalization on November 6, 1991.

In February 2000, the U.S. Attorney's Office for the Southern District of New York opened an investigation of Alameh. On Oct. 30, 2001, Alameh was indicted on one count of violating 18 U.S.C. § 1425(b), by allegedly obtaining citizenship on the basis of fraud. A bench trial was conducted at which Alameh's former wife, Aviles, testified that she was paid approximately $5,000 to marry Alameh, that she married him the day she met him, that two other couples also entered into green card marriages on that day, that she only saw Alameh a few times after their marriage, and that she never lived at the address listed on their marriage certificate. Alameh was found guilty and sentenced to two years of probation, with one month of that to be served in a community confinement center. The district court also issued an order revoking Alameh's citizenship, as required under 8 U.S.C. § 1451(e)-(f), but stayed that order pending this appeal.

## II. Discussion

### A. Statute of Limitations

The defendant was indicted under 18 U.S.C. § 1425(b), which has a ten year statute of limitations, 18 U.S.C. § 3291. Alameh does not dispute that he was indicted within that ten year period. Instead, he argues that the prosecution is time-barred because it depends upon a finding that he had illegally obtained LPR status in violation of 18 U.S.C. § 1546(a), which has a five-year statute of limitations, 18 U.S.C. § 3282. The defendant's claim has no merit. Defendant is not being prosecuted for violating § 1546(a), but for violating § 1425(b). Section 1425(b) applies to persons "not entitled" to citizenship or naturalization who "knowingly ...

procure[ ] or obtain[ ] or appl[y] for ... citizenship." § 1425(b). The reason that the accused is "not entitled" is irrelevant to the statute's requirements and to its limitations period. Accordingly, the fact that Alameh's lack of entitlement is based upon a fraudulent application for LPR status for which the statute of limitations has run does not matter. The district court correctly denied defendant's statute of limitations claim.

### B. Selective Prosecution

Alameh alleges that the decision to prosecute him was based upon his Arab and Muslim identity. He sought discovery to support this claim,[1] and offered two kinds of evidence in support of his motion. First, he provided affidavits from immigration attorneys declaring that the kind of prosecution brought against him was unprecedented, and that prosecutions of immigrants from the Middle East have "dramatically increased" in the past few years, most notably after September 11, 2001.

Second, he offered statistical evidence derived from a search conducted through CourtLink (a subsidiary of LexisNexis) identifying all individuals charged in the Southern and Eastern Districts of New York[2] under § 1435 and two similar marriage and immigration statutes.[3] The defense obtained a list of more than 400 names, and classified the accused according to whether it thought they did or did not have Arab or Muslim sounding surnames. If one credits the reliability of this dubious method, the results appear striking: Before September 11, 2001, fifteen percent of all such charges were brought against individuals with Arab or Muslim surnames, and eighty-five percent were brought against non-Arab / non-Muslim individuals. After September 11, 2001, these proportions were inverted: eighty-five percent of charges were brought against individuals with Muslim or Arab surnames, and only fifteen percent against non-Arab / non-Muslim individuals. The district court, however, noted that the case

---

1. Alameh requested 1) a complete list of all criminal prosecutions or investigations commenced against aliens or citizens for immigration offenses in the Southern District of New York over the past five years, with an indication of the violation alleged and any applicable statutory or regulatory provision, the first and last names and country of origin of each person, the date the investigation was commenced, the date the charges were filed, the status or result of each proceeding, and any file, docket, or indictment numbers; 2) a complete list of all of the people being investigated for the offenses described in item one since September 11, 2001, with first and last name and country of origin as well as conduct alleged and applicable statutory and regulatory provisions; 3) a complete list of all persons under investigation for the offenses described in item one before September 11, 2001, and who could have been prosecuted but were not prosecuted; and 4) all copies of internal memorandum or directives related to Arabs, Muslims, and persons from the Middle East since September 11, 2001.

2. The defense concedes that it erred by including the Eastern District of New York as well as the Southern District of New York in its statistical survey. Although it contended at oral argument in the district court that the statistics would be even more dramatic once this was corrected, there is no basis for us to assess this conclusory assertion. Indeed, because the defense provides no basis for reviewing the methodology by which it reached any of its conclusions-offering only the raw information obtained from CourtLink and its conclusions-no court can assess the credibility of its discrimination claim. *See United States v. Armstrong*, 517 U.S. 456, 470, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (describing the "required threshold" as a "credible showing of different treatment of similarly situated persons").

3. The survey included two charges in addition to § 1425: 8 U.S.C. § 1325 (improper entry by an alien, including through marriage fraud) and 18 U.S.C. § 1546 (fraud or misuse of visas, permits and other documents).

against Alameh was "strong" and "very far along" as of September 11, 2001, and concluded that the proffered evidence was insufficient to support discovery.

■■■ We review the district court's factual findings regarding denial of discovery for clear error, and its legal conclusions *de novo. Cf. United States v. Koh,* 199 F.3d 632, 639 (2d Cir.1999). As we have noted, "the decision as to whether to prosecute generally rests within the broad discretion of the prosecutor." *United States v. White,* 972 F.2d 16, 18 (2d Cir. 1992). This broad discretion is proper because "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). Of course, this discretion cannot be exercised in extra-legal fashion, and it is properly "subject to constitutional constraints." *United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). The equal protection component of the Fifth Amendment is one of the most important of these constraints, and thus "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (internal quotation marks omitted).

■■■ To make out a claim of selective prosecution, a defendant confronts a deliberately "rigorous standard," *id.* at 468, 116 S.Ct. 1480; he must provide "clear evidence" that the prosecutorial decision or policy in question had both " 'a discriminatory effect and ... was motivated by a discriminatory purpose.' " *Id.* at 465, 116 S.Ct. 1480. The discriminatory effect prong requires a showing that "similarly situated individuals of a different [classification] were not prosecuted." *Id.* A defendant seeking to show discriminatory

purpose must show " 'that the decision-maker ... selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.' " *Wayte,* 470 U.S. at 610, 105 S.Ct. 1524 (quoting *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)). Such purpose may, however, be demonstrated through circumstantial or statistical evidence. *See Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) ("Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."); *Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). There is nothing unusual in this, for federal law does not generally distinguish between direct and circumstantial evidence, and permits a conviction-which requires proof beyond a reasonable doubt-to be based entirely on circumstantial evidence. *See, e.g., Desert Palace, Inc. v. Costa,* —— U.S. ——, ——, 123 S.Ct. 2148, 2154, 156 L.Ed.2d 84 (2003).

■■■ The standard for discovery is "correspondingly rigorous," *Armstrong,* 517 U.S. at 468, 116 S.Ct. 1480, but of course not identical to the standard applied to the merits. Rather than "clear" evidence of discriminatory effect and motive (as required for the merits), to obtain discovery defendants need only produce "some" evidence of discriminatory effect and intent. *See United States v. Bass,* 536 U.S. 862, 863, 122 S.Ct. 2389, 153 L.Ed.2d 769 (2002). In *Armstrong,* the Supreme Court held that to show discriminatory effect a defendant seeking discovery must adduce "some evidence that similarly situ-

ated defendants of other races could have been prosecuted, but were not." 517 U.S. at 469, 116 S.Ct. 1480. The Court did not decide the question of what showing of discriminatory intent sufficed to support discovery.

 Applying the "some evidence" standard, we agree with the district court that the defendant has not met his burden. The only theory that the defendant's dubious evidence might support would be an allegation of discriminatory treatment after September 11, 2001.[4] At trial, however, the government put on the record evidence that it had diligently investigated the case for almost eighteen months and had nearly completed the investigation before September 11. Because the indictment did not occur until after September 11, such evidence does not *preclude* a finding of selective prosecution. Nevertheless, in an unusual case like this one in which most of the investigation occurred prior to the date of the alleged discriminatory motive, the defendant bears a particularly heavy burden. Prosecutorial decisions are presumed to be proper. *See id.* at 464, 116 S.Ct. 1480. Accordingly, we start from the strong presumption that any individual a) against whom such extensive evidence had been amassed, and b) in whose case so many resources had already been invested, would have been prosecuted regardless of the events of September 11, 2001.

Alameh has offered us no evidence sufficient to dislodge this presumption. He argues that the standard for discovery is a lesser standard than that for the merits, and we agree. He further submits that in this particular type of case, information about similarly situated individuals who were not prosecuted is hard to produce without discovery. While it may be that the amount and kind of evidence that suffices to meet the requirements of "some evidence" justifying discovery is case-specific, and that courts must consider what evidence a defendant can obtain with due diligence in the absence of discovery,[5] none of that need be decided in this case. Even on these assumptions, the evidence Alameh proffered does not suffice. His statistical evidence suffers from serious methodological difficulties. More particularized and persuasive affidavits might have provided "some evidence," but those that the defendant submitted speak in generalities and offer only beliefs. They are therefore inadequate to support discovery. *See Armstrong,* 517 U.S. at 470, 116 S.Ct. 1480 (affidavits "recount[ing] hearsay and report[ing] personal conclusions based upon anecdotal evidence" are not sufficient to justify discovery); *see also United States v. Fares,* 978 F.2d 52, 59 (2d Cir.1992) ("Mere assertions and generalized proffers on information and belief are insufficient."); *Berrios,* 501 F.2d at 1211 (affidavit from defendant and attorney that they "believe[d]" there was improper motive and that "hundreds" of similarly situated individuals went unprosecuted was insufficient). As such, the motion for discovery was properly denied.

4. As noted above, one of the affidavits did suggest an increase in prosecutions of individuals from the Middle East prior to September 11, 2001, but the allegation proffered was based merely on belief and was lacking in specificity. *See Armstrong,* 517 U.S. at 470, 116 S.Ct. 1480; *United States v. Fares,* 978 F.2d 52, 59 (2d Cir.1992). Moreover, the defendant's arguments in his brief and at oral argument and the statistical evidence that he offered unequivocally operate on the theory that the discriminatory treatment alleged occurred in the wake of September 11.

5. *Cf. Armstrong,* where in denying discovery the Court noted that it was not assigning the defendants an "insuperable task." 517 U.S. at 470, 116 S.Ct. 1480.

Since the amount of evidence needed to support a selective prosecution claim on the merits is greater than that which justifies discovery, it follows that, when, as here, discovery was not warranted, defendant's merits claim must also fail. We therefore affirm the district court's judgment on both matters.

### C. Mens Rea

The defendant contends that there was insufficient evidence for the fact finder to have concluded beyond a reasonable doubt that Alameh "knowingly" violated 18 U.S.C. § 1425(b). This requires us to determine the mental state requirement of § 1425(b). The statute applies to any individual who,

> whether for himself or another person not entitled thereto, knowingly issues, procures or obtains or applies for or otherwise attempts to procure or obtain naturalization, or citizenship, or a declaration of intention to become a citizen, or a certificate of arrival or any certificate or evidence of nationalization or citizenship, documentary or otherwise, or duplicates or copies of any of the foregoing.

18 U.S.C. § 1425(b).

■ On its face, this might be read to require "knowledge" only of the attempt to obtain naturalization. However, because "applying for naturalization is almost always a voluntary, intentional act," *United States v. Pasillas–Gaytan,* 192 F.3d 864, 868 (9th Cir.1999), such a reading would effectively create a strict liability crime, in contravention of the "general rule that criminal liability requires an 'evil-meaning mind,' " *United States v. Bailey,* 444 U.S. 394, 404 n. 4, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). It would, moreover, criminalize countless seemingly innocent acts, such as applying for naturalization outside of the statutory time period, or applying while lacking the requisite proficiency in the English language. *See Pasillas–Gaytan,* 192 F.3d at 868. Indeed, it would appear to make a criminal of every person who knowingly applied for naturalization but, not being entitled to citizenship, was denied it. We do not believe Congress intended such a result. We therefore hold, with the Fifth and Ninth Circuit Courts of Appeals, that § 1425(b) cannot be read to permit conviction on production of proof of a knowing attempt to acquire citizenship without further proof of the defendant's knowledge that he was not entitled to citizenship. *See id.* ("liability under § 1425 requires proof that [the defendant] either knew he was not eligible for naturalization ... or knowingly [misrepresented the factor impugning his eligibility] on his application or in his interview"); *United States v. Moses,* 94 F.3d 182, 184 (5th Cir.1996) (defendant must know he is not entitled to citizenship to be convicted under § 1425).

■ The district court, in the bench trial afforded Alameh, applied the proper mens rea requirement. In evaluating Alameh's sufficiency of the evidence claim, we must, therefore, consider whether, viewing the evidence in the light most favorable to the government, no reasonable trier of fact could have found that the elements of the crime (including the aforementioned *mens rea* ), had been proven beyond a reasonable doubt. *See United States v. Matt,* 116 F.3d 971, 974 (2d Cir.1997) (per curiam). We conclude that the prosecution offered sufficient evidence to support the finding that Alameh knew both that he was applying for citizenship and that he was not entitled to citizenship at the time he applied. Accordingly, there is no basis to overturn the district court's determination.

### D. Findings of Fact

■ The defendant claims that the district court violated the command of

Federal Rule of Criminal Procedure 23(c), which requires that "[i]f a party requests before the finding of guilty or not guilty, the court must state its specific findings of fact in open court or in a written decision or opinion." The defendant contends that his review of the requirements of the crime in his summation served as a request for specific findings. We disagree: A summary of the elements of a crime is not a "request" under Rule 23(c). Where the record reveals no request for detailed findings, a general verdict of guilty will suffice. See United States v. Devenere, 332 F.2d 160, 162 (2d Cir.1964). The defendant's claim thus necessarily fails.

### E. Other Issues

The defendant's other challenges to his conviction can be dealt with summarily. The defendant contends that the government gained unfair tactical advantage and severely prejudiced his case by waiting nearly fifteen years after his marriage and almost ten years after his application for citizenship to bring an indictment against him. Pre-indictment delay can constitute a violation of the Due Process Clause of the Fifth Amendment, but defendants making such claims must show both "actual prejudice" and "unjustifiable Government conduct." See United States v. Elsbery, 602 F.2d 1054, 1059 (2d Cir.1979). To show unjustifiable conduct, a defendant must demonstrate that the government has intentionally used delay to gain unfair tactical advantage. See United States v. Marion, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); United States v. Lawson, 683 F.2d 688, 694 (2d Cir.1982). Alameh has proffered no evidence that intentional delay occurred. His pre-indictment delay claim must, therefore, be rejected, without regard to whether the requirement of actual prejudice was satisfied.

Alameh also asserts that 18 U.S.C. § 1425(b) is unconstitutionally vague. To make out such a claim, he must show that the statute in question fails to give "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden," United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (citation and quotation marks omitted), and that the statute is vague as applied to him, Chapman v. United States, 500 U.S. 453, 467, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). Defendant argues that a person of "ordinary intelligence" in his circumstance would not have known that he was "not entitled" to naturalization obtained on the basis of LPR status, despite the fact that such status was in turn secured through marriage fraud. The district court disagreed. We see no reason to doubt the district court's conclusion.

Finally, the defendant asserts that the district court improperly admitted prejudicial hearsay evidence from an alleged co-conspirator, Milagros Figueroa. The district judge explicitly noted that she did not rely upon Figueroa's testimony in reaching her guilty verdict. As a result, any error was harmless. But this claim also fails on the merits. To admit hearsay testimony under Rule 801(d)(2)(E) of the Federal Rules of Evidence, the district court "must find (a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." United States v. Maldonado-Rivera, 922 F.2d 934, 958 (2d Cir.1990); see also Bourjaily v. United States, 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). These are preliminary facts for the district court to determine under a "preponderance of the evidence" standard. See Bourjaily, 483

U.S. at 175–76, 107 S.Ct. 2775. The district court found that all three *Maldonado–Rivera* factors were easily met. There was no error, let alone clear error, in its findings.

### III. Conclusion

We have considered all of Mr. Alameh's claims and find them meritless. The judgment of the district court is AFFIRMED.