United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 5, 2006**

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals
for the Fifth Circuit*

No. 04-50903

MANOUTCHER AMOUZADEH,

Petitioner-Appellant,

v.

GRACIELA WINFREY, as Interim Field Office Director for
Detention and Removal for the Bureau of Immigration and
Customs Enforcement; US IMMIGRATION AND CUSTOMS
ENFORCEMENT, as an agency of the Government of the United
States of America; DEPARTMENT OF HOMELAND SECURITY,
as an agency of the Government of the United States of
America; MICHAEL CHERTOFF, SECRETARY, DEPARTMENT OF HOMELAND
SECURITY; ALBERTO GONZALES, US ATTORNEY GENERAL,

Respondents-Appellees.

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, DeMOSS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Manoutcher Amouzadeh appeals the district court's denial of his 28 U.S.C. § 2241

habeas corpus petition, which challenged an order of removal by the Board of Immigration

Appeals ("BIA"). The issues are (1) whether unlawful procurement of naturalization in violation of 18 U.S.C. § 1425(a) is a crime involving moral turpitude under section 237(a)(2)(A)(ii) of the Immigration and Naturalization Act, as amended ("INA"),[1] and (2) whether Amouzadeh was eligible for concurrent relief under former INA § 212(c)[2] and current INA § 240A(a).[3] Because we conclude that the violation of 18 U.S.C. § 1425(a) is a crime involving moral turpitude and that Amouzadeh is not entitled to relief under INA § 240A(a), we deny Amouzadeh's petition.

## I

Amouzadeh, a native of Iran, first entered the United States in 1978 as a student. After marrying a United States citizen, Amouzadeh's status was adjusted to that of a lawful permanent resident, and on September 21, 1995, he became a citizen of the United States by naturalization. However, on September 5, 1995, just two weeks prior to his final naturalization hearing, Amouzadeh was arrested on charges that he was part of a conspiracy to possess cocaine with the intent to distribute. He was convicted on September 4, 1996 of that crime.

---

[1] INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii) (2000) (providing that "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude . . . is deportable").

[2] Former INA § 212(c), 8 U.S.C. § 1182(c) (1994) (repealed 1996) (providing that the Attorney General had the discretion to admit a lawful permanent resident who met certain requirements unless the alien had been convicted of one or more aggravated felonies and had served a term of imprisonment of at least five years for such felony or felonies).

[3] 8 U.S.C. § 1229b(a) (2000) (permitting cancellation of removal for certain lawful permanent residents who have not been convicted of any aggravated felony).

At his final naturalization hearing, Amouzadeh was asked whether he had, since petitioning for naturalization, "knowingly committed any crime or offense, for which [he had] not been arrested; or [had been] arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance including traffic violations?" Amouzadeh falsely stated, under oath, that he had only been cited for a traffic violation since petitioning for naturalization. Amouzadeh's false statement formed the basis of his later section 1425(a) conviction for knowingly procuring naturalization contrary to law. On March 21, 2001, as a result of his section 1425(a) conviction, Amouzadeh's United States citizenship was revoked.[4]

The Immigration and Naturalization Service ("INS") initiated removal proceedings on April 12, 2001, charging that Amouzadeh was removable under INA § 237(a)(2)(A)(iii),[5] as an alien convicted of an aggravated felony (drug trafficking conviction), and under INA § 237(a)(2)(A)(ii),[6] as an alien convicted of two crimes involving moral turpitude (drug trafficking conviction and unlawful procurement of naturalization conviction). The Immigration Judge ("IJ") rejected Amouzadeh's argument that his section 1425(a) conviction for unlawfully procuring naturalization was not a conviction for a crime involving moral turpitude and sustained both charges of removability. The IJ also determined that

---

[4] *See* 8 U.S.C. § 1451(e) (requiring that the district court revoke a person's citizenship upon the person's conviction under 18 U.S.C. § 1425 of knowingly procuring naturalization in violation of law).

[5] 8 U.S.C § 1227(a)(2)(A)(iii) (2000).

[6] 8 U.S.C. § 1227(a)(2)(A)(ii) (2000).

3

Amouzadeh was ineligible for relief from removal under former INA § 212(c) because of his section 1425(a) conviction or under current INA § 240A(a) because of his aggravated felony conviction. Amouzadeh appealed to the BIA, who reached the same conclusions as the IJ and dismissed his appeal, ordering him removed to Iran in accordance with the IJ's decision.

Amouzadeh later filed a section 2241 habeas petition in the district court, challenging his removal on two grounds: (1) the BIA erred in determining that his section 1425(a) conviction was a crime involving moral turpitude, and (2) in the alternative, even if his section 1425(a) conviction was a crime involving moral turpitude, the BIA erred in concluding that he could not apply concurrently for relief from removal under current INA § 240(A) and former INA § 212(c). The district court denied Amouzadeh's habeas petition. Amouzadeh appealed.

## II

While Amouzadeh's habeas petition was pending on appeal, Congress passed the REAL ID Act of 2005 (the "Act"), which divested the federal district courts of jurisdiction to hear habeas petitions attacking removal orders, effective May 11, 2005.[7] The Act provides that "a petition for review filed with the appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal . . . ."[8] The Act also requires district courts to transfer any pending habeas cases challenging an order of removal to the

---

[7]Pub. L. No. 109-13, 119 Stat. 231 (2005).

[8]§ 106(a)(1)(A)(iii), 119 Stat. at 310.

4

appropriate court of appeals; the courts of appeals are to treat the habeas petitions as timely-filed petitions for review.[9]  The Act does not, however, address how courts of appeals should treat habeas petitions that were pending on appeal on May 11, 2005 when the Act became effective.  We recently held that such habeas petitions "are [also] properly converted into petitions for review."[10]  Therefore, because Amouzadeh's habeas petition was pending on appeal on the Act's effective date, we convert it into a petition for review of the underlying BIA decision.  We have jurisdiction over Amouzadeh's converted-petition because it involves a question of law[11]—whether a violation of section 1425(a) is a crime involving moral turpitude.

### III

The INA provides that an alien is deportable if he has been convicted of two or more crimes involving moral turpitude.[12]  The INA does not, however, "define the term 'moral turpitude[,]' and legislative history does not reveal congressional intent regarding which crimes are turpitudinous.  Instead, Congress left the interpretation of [the term] to both the BIA and the federal courts."[13]  Consequently, this court applies a two-part standard of review

---

[9]§ 106(c), 119 Stat. at 311.

[10]*Rosales v. Bureau of Immigration and Customs Enforcement*, 426 F.3d 733, 736 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1055 (2006).

[11]*See* 8 U.S.C. § 1252(a)(2)(D).

[12]18 U.S.C. § 1227(a)(2)(A)(ii).

[13]*Smalley v. Ashcroft*, 354 F.3d 332, 335-36 (5th Cir. 2003) (internal quotation omitted).

5

to the BIA's conclusion that an alien has committed a crime involving moral turpitude:

> First, we accord substantial deference to the BIA's definition of the term "moral turpitude." Second, we review *de novo* whether the elements of the state or federal [offense at issue] fit the BIA's definition of a [crime involving moral turpitude]. Importantly, this two-step approach provides both consistency—concerning the meaning of moral turpitude—and a proper regard for the BIA's administrative role—interpretation of federal immigration laws, not state and federal criminal statutes."[14]

The BIA, through its administrative decisions, has crafted the following definition of

the term "moral turpitude":

> Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.[15]

When determining whether a particular law meets the BIA's definition of "moral

turpitude," we employ a categorical approach that focuses "on the inherent nature of the

crime, as defined in the statute . . . , rather than the circumstances surrounding the particular

transgression."[16] Under the categorical approach, we read the statute at its minimum, taking

into account "the minimum criminal conduct necessary to sustain a conviction under the

---

[14]*Id.* at 335-36 (internal quotation and citations omitted); *see also Omagah v. Ashcroft*, 288 F.3d 254, 258 (5th Cir. 2002) ("Determining a particular federal or state crime's elements lies beyond the scope of the BIA's delegated power or accumulated expertise.").

[15]*Hamdan v. I.N.S.*, 98 F.3d 183, 186 (5th Cir. 1996) (quoting the BIA's decision in that case) (internal citations omitted).

[16]*Okabe v. I.N.S.*, 671 F.2d 863, 865 (5th Cir. 1982).

statute."[17]  An offense is a crime involving moral turpitude if the minimum reading of the statute necessarily reaches only offenses involving moral turpitude.[18]  However, "if the orbit of the statute may include offenses not inherently entailing moral turpitude," then the crime is not a crime involving moral turpitude.[19]  "An exception to this general rule is made if the statute is divisible into discrete subsections of acts that are and those that are not [crimes involving moral turpitude]."[20]  If the statute is divisible, "we look at the alien's record of conviction to determine whether he has been convicted of a subsection that qualifies as a [crime involving moral turpitude]."[21]

Section 1425(a) provides that "[w]hoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or citizenship" shall be fined or imprisoned, or both.[22]  Amouzadeh pleaded guilty to violating section 1425(a) by falsely stating under oath, in a Notice of Final Naturalization Hearing that he had never been arrested for violating any law. However, because section 1425(a) is not divisible, Amouzadeh's actual conduct cannot be considered.

---

[17]*Hamdan*, 98 F.3d at 189.

[18]*Pichardo v. I.N.S.*, 104 F.3d 756, 759 (5th Cir. 1997).

[19]6-71 C. GORDON, S. MAILMAN & S. YALE-LOEHR, IMMIGRATION AND PROCEDURE § 71.05(1)(d)(ii) (2006); *see also Pichardo*, 104 F.3d at 760 n.6 ("As a general rule, if a statute encompasses both acts that do and do not involve moral turpitude, a finding of moral turpitude cannot be sustained.").

[20]*Hamdan*, 98 F.3d at 186.

[21]*Smalley v. Ashcroft*, 354 F.3d 332, 336 (5th Cir. 2003) (internal quotation omitted).

[22]18 U.S.C. § 1425(a) (2000).

Instead, our crime involving moral turpitude analysis is confined to section 1425(a)'s statutory text, and we will only classify Amouzadeh's section 1425(a) conviction as a crime involving moral turpitude if "every violation of the . . . statute necessarily, under all circumstances, . . . involve[s] moral turpitude."[23]

Amouzadeh contends that section 1425(a) is broad enough to punish behavior that is not "accompanied by a vicious motive or a corrupt mind"[24] and therefore does not specify a crime involving moral turpitude. For example, Amouzadeh contends that an innocent misstatement during the naturalization process, made without any intent to deceive, can form the basis of a section 1425(a) conviction. To accept Amouzadeh's argument, this court would have to read the term "knowingly" in section 1425(a) as imposing no *mens rea* requirement, other than the requirement of knowingly applying for naturalization. Although we have not directly addressed this argument, the Ninth Circuit has found it unpersuasive. In *United States v. Pasillas-Gaytan*, the Ninth Circuit concluded that the government cannot sustain a section 1425(a) conviction merely by showing that the defendant intentionally applied for naturalization but rather must show that the defendant acted with a culpable state of mind.[25] We agree.

In *Pasillas-Gaytan*, an alien was charged with violating section 1425(a) by knowingly

---

[23]6-71 C. GORDON, S. MAILMAN & S. YALE, *supra* note 19 at § 71.05(1)(d)(ii) (internal quotation omitted).

[24]*Hamdan*, 98 F.3d at 186 (quoting the BIA's decision in the case).

[25]*United States v. Pasillas-Gayton*, 192 F.3d 864, 868-69 (9th Cir. 1999).

8

misrepresenting his criminal record in a naturalization hearing.[26]  At trial, the alien did not

dispute that he made the misrepresentation.[27]  Instead, he claimed that the misrepresentation

was an innocent mistake, due to his poor understanding of English and his limited

education.[28]  The jury was instructed that it could convict the alien of violating section

1425(a) if the government proved that he "knowingly" acquired naturalization and that such

naturalization was "contrary to law."[29]

The Ninth Circuit concluded that "[s]ince applying for naturalization, absent the

oddest circumstances, is necessarily a knowing act, the jury charge essentially made section

1425 a strict liability offense, one which imposes criminal liability without regard to the

defendant's state of mind at the time he sought naturalization."[30]  The Court found the jury

instruction improper because such an interpretation of section 1425(a) would violate "[t]he

general rule . . . that criminal statutes do not impose strict liability."[31]

"'[P]articular care [is] taken to avoid construing a statute to dispense with *mens rea*

---

[26]*Id.* at 866.

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.* at 867.

[31]*Id.* at 868; *see also United States v. Bailey*, 444 U.S. 394, 404 n. 4 (1980) ("[S]trict liability crimes are exceptions to the general rule that criminal liability requires an evil-meaning mind.") (internal quotations omitted).

where doing so would criminalize a broad range of apparently innocent conduct.'"[32] If

section 1425(a) is construed as not having a culpable state of mind requirement, it:

> would criminalize completely innocent conduct . . . . It would apply to defendants who did not understand the documents they were signing. . . . It would also apply to those who innocently apply for citizenship outside the statutory time periods for making such application, and those who innocently apply for citizenship but are not sufficiently proficient in the English language to qualify for citizenship.[33]

The Ninth Circuit has thus rejected Amouzadeh's argument that Congress intended section

1425(a) to impose no *mens rea* requirement, other than the requirement of intentionally

applying for naturalization. Rather, the court concluded that section 1425(a) required a

culpable state of mind—namely, that the defendant "either knew he was not eligible for

naturalization due to his prior conviction, or knowingly misstated his criminal record on his

application or in his interview."[34]

　　We agree with the Ninth Circuit's conclusion that to sustain a section 1425(a)

conviction, the government must prove that the defendant acted with a culpable state of

mind.[35] An alien may violate section 1425(a) by seeking naturalization with the knowledge

---

[32]*Id.* at 869 (quoting *United States v. Staples*, 511 U.S. 600, 619 (1994) (internal quotation omitted)).

[33]*Id.*

[34]*Id.* (footnote omitted).

[35]*Cf. United States v. Moses*, 94 F.3d 182, 184 (5th Cir. 1996) (construing 18 U.S.C. § 1425(b), rather than § 1425(a), and concluding "a review of [18 U.S.C. § 1425(b)] reveals three elements that must be proved beyond a reasonable doubt . . . : (1) the defendant issued, procured, obtained, applied for, or otherwise attempted to procure naturalization or citizenship; (2) the defendant is not entitled to naturalization or citizenship; and (3) *the defendant kn[ew] that he*

that the applicant is ineligible for naturalization, or has knowingly misrepresented facts or presented false documents. We have no basis for concluding that Congress intended to criminalize the procurement of naturalization that is contrary to law when the applicant or procurer does not know that the naturalization is contrary to law. We therefore find unavailing Amouzadeh's argument that section 1425(a) encompasses behavior that is not morally turpitudinous.

We note that the BIA concluded that the term "contrary to law," though not defined by the statute, generally refers to violations of 18 U.S.C. §§ 1001(a)[36] or 1015(a),[37] statutes that criminalize knowingly false statements made under oath in governmental proceedings. Based on this conclusion, the BIA determined that, "to be convicted under 1425(a), the [defendant] must knowingly have made a false statement to a government official for the purpose of procuring naturalization . . . ." Because "[c]onvictions for making false statements under oath necessarily involve moral turpitude," the BIA determined that section 1425(a) is a crime involving moral turpitude. The BIA was in error in so limiting the scope

_or she is not entitled to naturalization or citizenship_") (emphasis added).

[36] 18 U.S.C. § 1001(a) provides:
> [W]hoever . . . knowingly and willfully falsifies, conceals, or covers up any trick, scheme, or device a material fact[, or] makes any false, fictitious or fraudulent statement or representation . . . shall be fined under this title or imprisoned not more than 5 years, or both.

[37] 18 U.S.C. § 1015(a) provides:
> Whoever knowingly makes any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens . . . [s]hall be fined under this title or imprisoned not more than five years or both.

11

of section 1425(a).

The BIA relied on two federal district court cases, *United States v. Biheiri*[38] and *United States v. Rogers*.[39] In *Biheiri*, the court stated that "'[c]ontrary to law' must *include* 'contrary to 18 U.S.C. § 1015.'"[40] Similarly, in *Rogers*, the court determined that a false statement to a federal officer in violation of 18 U.S.C. § 1001, *may be* "contrary to law."[41] Neither of these cases limit section 1425(a)'s scope to knowingly false statements in violation of sections 1001 and 1015, and the BIA was mistaken in reading them to say otherwise.

Nevertheless, the BIA's ultimate conclusion that Amouzadeh's violation of 18 U.S.C. § 1425 was a crime involving moral turpitude was correct. It is undisputed that Amouzadeh's drug conviction is a crime involving moral turpitude. Accordingly, Amouzadeh has been convicted of two crimes involving moral turpitude and is removable pursuant to INA § 237(a)(2)(A)(ii).[42]

## IV

Amouzadeh next argues that, even if a violation of 18 U.S.C. § 1425(a) is a crime involving moral turpitude, the BIA erred in concluding that he was not eligible for concurrent

---

[38]293 F. Supp. 2d 656 (E.D. Va. 2003).

[39]898 F. Supp. 219 (S.D.N.Y. 1995).

[40]293 F. Supp. 2d at 658 (emphasis added).

[41]898 F. Supp. at 222.

[42]8 U.S.C. § 1227(a)(2)(A)(ii) (2000).

12

relief from removal under former INA § 212(c)[43] and current INA § 240A(a).[44] Amouzadeh

contends that the Attorney General can, in his discretion, waive Amouzaheh's inadmissibility

under section 212(c) even though Amouzadeh was convicted of an aggravated felony: his

drug conviction. If that waiver were granted, Amouzadeh contends, it would "cure" the drug

conviction, and it could no longer be considered for purposes of INA § 240A(a). Therefore,

he reasons, he would be eligible under the latter provision for cancellation of removal.

The BIA contends that Amouzadeh failed to raise the question of whether these

sections apply concurrently in either his direct appeal to the BIA or in a motion to reopen and

has therefore failed to exhaust his administrative remedies.[45] Amouzadeh contends that

because "the BIA, on its own initiative, chose to address [the concurrent relief

claim], . . . [he] fulfilled his statutory requirement to exhaust his administrative remedies."

It is not entirely clear whether the BIA did address Amouzadeh's concurrent relief claim, but

even assuming it did, the claim has no merit.

A waiver under section 212(c) does not remove an aggravated felony conviction from

an alien's record. The conviction still exists for purposes of section 240A(a). The BIA held

in *In re Balderas* that "since a grant of section 212(c) relief 'waives' the finding of

excludability or deportability rather than the basis of excludability itself, the crimes alleged

---

[43]8 U.S.C. § 1182(c) (1994) (repealed 1996).

[44]8 U.S.C. § 1229b(a) (2000).

[45]*See Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004) ("An alien fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance before the BIA—either on direct appeal or in a motion to reopen.") (quotation omitted).

to be grounds for excludability or deportability [removability] do not disappear from the alien's record for immigration purposes."[46] This court approved that holding in *Molenda v. INS*.[47] Amouzadeh's aggravated felony conviction precludes cancellation of removal under section 240A(a).

* * *

For the foregoing reasons, we DENY Amouzadeh's converted-petition for review.

---

[46]20 I. & N. Dec. 389, 391 (B.I.A. 1991).

[47]998 F.2d 291, 294-95 (5th Cir. 1993).

14